UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CRIMINAL ACTION NO. |
| VS. | ) | |
| | ) | 3:04-CR-233-G |
| RAYMOND KELLER, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

### I.  BACKGROUND

On May 19, 2005, the defendant was convicted on two counts in a
superseding indictment charging false statement to a federally insured bank, in
violation of 18 U.S.C. § 1014, and wire fraud and attempted wire fraud, in violation
of 18 U.S.C. §§ 1343, 1349.  By statute, each crime carries a maximum sentence of
thirty years imprisonment and a one million dollar fine.  The maximum possible
sentence allowed by law, therefore, would be a term of imprisonment of sixty years
and a fine of up to two million dollars.

## II.  DISCUSSION

### A.  Government's Objections to the PSR

The government has no objections to the presentence sentence investigation report ("PSR") prepared on July 11, 2005 and adopts it as written.  Government's Statement Regarding Pre-Sentence Report.

### B.  Defendant's Objections to the PSR

#### 1.  Objection to Paragraphs 18 and 25

The defendant objected to paragraphs 18 and 25 in which the loss suffered by The Independent Banker's Bank ("TIB") was calculated to be $931,500.  Defendant's Objections to Presentence Report received August 16, 2005 ("Objections") at 1. Specifically, the defendant argued that (1) the harm suffered should be the fair market value of the plane ($1,800,000) subtracted from the contracted-for price of the lease ($2,131,500), equaling $331,500,[1] (2) funds actually received by TIB as lease payments should be deducted, (3) TIB's loss should actually be zero since it will be compensated by its insurance carrier, and (4) this is a case in which the amount of loss substantially overstates the seriousness of the defendant's conduct.  *Id*. (citing PSR ¶¶ 18, 25, 73).

---

[1]      The objections actually state that the "harm was at best the fair market value of the plane minus the contracted for price of the lease."  Objections at 1.  As this would result in a negative number, the court rephrased the objections to give the presumably intended amount.

The government responds that none of these objections should be sustained. With regard to the lease payments, the government states that, to the extent the lease payments are the equivalent of interest, the payments would not reduce the size of the loss to TIB. Government's Response to Defendant's Objections to the Pre-Sentence Report ("Government's Response") ¶ 2. The probation officer clarified the nature of the lease contract in this situation. Addendum to the Presentence Report prepared August 23, 2005 ("Addendum") Section I. Specifically, the probation officer stated that the instant contract was a lease agreement, not a purchase contract. *Id*. As the lease agreement could not be cancelled (it was a "hard" contract), there was an account receivable in the amount due when the lessee defaulted (over $2,131,000). *Id*. Therefore, the lease payments should not be deducted from the loss sustained by TIB. Incidentally, this lease was defaulted very early in its term: out of 113 payments, only seven were made. Therefore, approximately ninety-five percent of the payments that were due in this stream of income were not received. The court agrees with the probation officer's calculations and overrules this objection.

With regard to the monies received by TIB from its insurance carrier, the government states that the loss is merely shifted from TIB to the insurance carrier, rather than negating a fact of loss. Government's Response ¶ 3. The probation officer correctly notes that 18 U.S.C. § 3664(f)(1)(B) states that "[i]n no case shall the fact that a victim has received or is entitled to receive compensation with respect

to a loss from insurance or any other source be considered in determining the amount of restitution." Addendum Section I.  Considering the statute, the court believes the probation officer correctly refused to include insurance payments in the calculation loss; defendant's objection is therefore overruled.  Of course, the fact that the victim is the insurance company rather than the bank does not mean that no loss occurred. In fact, when determining the seriousness of the defendant's offense conduct under the Guidelines, it is significant that a loss occurred, not who the victim is.

Finally, the defendant argued that this is a case in which the amount of loss substantially overstates the seriousness of the defendant's conduct.  Objections at 1. The government did not directly address this contention, Government's Response, nor did the probation officer respond to this argument in her addendum.  *See generally* Addendum.  However, in paragraph 73 of the PSR, the officer cites U.S.S.G. § 2B1.1, comment (n.15(B)), and suggests that this may be a case in which "the offense level . . . substantially overstates the seriousness of the offense," which then may warrant a downward departure.  PSR ¶ 73.  The officer goes on to note that if the bank had retained the pledged collateral (rather than selling the plane after default), the loss would have been $331,500, resulting in an overall offense level of 20, rather than 22. *Id*.  With a criminal history category of I, the Guidelines range would be 33 to 41 months.  U.S.S.G. Sentencing Table.  However, since the bank chose to sell the plane for $1.2 million before the defendant's sentencing ($600,000 less than the fair

market value determined by the government's expert witness), the defendant became responsible for that loss under the Guidelines.  PSR ¶¶ 17, 18 (citing U.S.S.G. § 2B1.1, comment (n.2(E)(ii))).

a. <u><em>Booker</em> and <em>Blakely</em> Case Law</u>

In *United States v. Booker*, ___ U.S. ___, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005), the Supreme Court considered the issues raised in *Blakely v. Washington*, 542 U.S. 296 (2004), and held that the provision making the Federal Sentencing Guidelines mandatory (18 U.S.C. § 3553(b)(1)) should be severed and excised from the Sentencing Reform Act of 1984 because it is incompatible with the Sixth Amendment jury trial requirement.  125 S. Ct. at 756-57.  The Court stated that this modification makes the Guidelines effectively advisory in nature, requiring a sentencing court to consider Guidelines ranges, but permitting the court to tailor the sentence in light of other statutory concerns.  *Id*. at 764.  Specifically, the court reasoned that without the mandatory provision, "the Act nonetheless requires judges to take account of the Guidelines together with other sentencing goals" and "to impose sentences that reflect the seriousness of the offense, promote respect for the law, provide for just punishment, afford adequate deterrence, protect the public, and effectively provide the defendant with needed education or vocational training and medical care."  *Id*. at 764-65.  In accordance with the *Booker* decision, this court must

consider the Guidelines, but is no longer required to impose a sentence within the calculated range.

The Fifth Circuit has recently interpreted the Supreme Court's *Booker* decision in *United States v. Mares*, 402 F.3d 511 (5th Cir.), *cert. denied*, __ S.Ct. __, 2005 WL 816208 (U.S. Oct. 3, 2005).  There, the court stated that sentencing courts were under a duty to "consider" the Guidelines even though they are only advisory, rather than mandatory.  402 F.3d at 519.  In addition, the judge is entitled to find by a preponderance of the evidence standard all facts relevant to the determination of a Guideline or non-Guideline sentence without violating the defendant's Sixth Amendment rights.  *Id*.  Based on appellate review of "reasonableness," a sentence imposed by district court within the Guideline range will require little explanation.  *Id*.  However, should the sentencing judge elect to impose a "non-Guideline sentence" (in contrast to a Guidelines sentence which has been adjusted by "departures" as allowed by the Guidelines), the judge should "carefully articulate the reasons she concludes that the sentence she has selected is appropriate for that defendant."  *Id*.  In order to permit the appellate court to review the sentencing court's sentence for reasonableness, these reasons should be fact specific.  *Id*.

Given this "duty to consider" the Guidelines, the following analysis is based on case law previous to *Booker* and *Blakely*, with the proviso that this court may impose a non-Guideline sentence if the appropriate recitation of fact-specific justification is

- 6 -

given in a written order.  *United States v. Saldana*, Nos. 04-50527, 04-50591, 2005

WL 2404810, at *7 (5th Cir. Sep. 30, 2005) (citing *Mares*, 402 F.3d at 519 n.8).

b.  Downward Departure for Diminished Capacity

Although not raised by either the defendant or the government, the court

wishes to address a possible downward departure for diminished capacity under

U.S.S.G. § 5K2.13.  This section provides in part, "[a] downward departure may be

warranted if (1) the defendant committed the offense while suffering from a

significantly reduced mental capacity; and (2) the significantly reduced mental

capacity contributed substantially to the commission of the offense."  *Id*.[2]

Prior to sentencing, the court received many letters from the defendant and his

friends and family.  These letters mainly discussed the defendant's moral character

and the need for lenience in sentencing, but also emphasized the defendant's medical

condition as a result of a brain aneurism.  *See generally* various letters from the

defendant and his friends and family ("Letters").  This case was tried for the

defendant by two very capable criminal defense lawyers, but neither party asked for a

medical evaluation of the defendant before trial to determine whether his competency

had in any way been impaired.  Therefore, after reading through these letters and

---

[2]      This is the version of U.S.S.G. § 5K2.13 in the Guidelines Manual
effective November 1, 2004.  The PSR is based on the Guidelines Manual effective
November 1, 2002.  PSR ¶ 22.  Although the court cannot mix and match various
editions of the Guidelines Manual, *see* § 1B1.11(b)(2), the changes to § 5K2.13 in the
later edition are merely clarifying, rather than substantive, and thus may be
considered.

seeing how much emphasis was placed on the defendant's capacity, the court was

puzzled as to why no one had suggested a downward departure under the Guidelines

for diminished capacity.  This emphasis suggests the need for the court to further

analyze the applicability of downward departure for diminished capacity.

Section 5K2.13 of the Guidelines lists exceptions to the applicability of

downward departure for diminished capacity:

> [T]he court may not depart below the applicable guideline
> range if (1) the significantly reduced mental capacity was
> caused by voluntary use of drugs or other intoxicants;
> (2) the facts and circumstances of the defendant's offense
> indicate a need to protect the public because the offense
> involved actual violence or a serious threat of violence;
> (3) the defendant's criminal history indicates a need to
> incarcerate the defendant to protect the public; or (4) the
> defendant has been convicted of an offense under chapter
> 71, 109A, or 117, of title 18, United States Code.

U.S.S.G. § 5K2.13.  None of these exceptions apply, so this departure may be

available to the defendant.

However, looking to the application note following this policy statement, the

Guidelines state that "'[s]ignificantly reduced mental capacity' means the defendant,

although convicted, has a significantly impaired ability to (A) understand the

wrongfulness of the behavior comprising the offense or to exercise the power of

reason; or (B) control behavior that the defendant knows is wrongful."  U.S.S.G.

§ 5K2.13, comment (n.1).  The defendant told the court in a letter that he recognized

his decisions were wrong.  Therefore, it appears that the aneurism did not impair his

ability to distinguish right from wrong, and this basis for downward departure is not available.

c. <u>Downward Departure for Aberrant Behavior</u>

The Guidelines also provide for the possibility of a sentence below the applicable Guideline range if the defendant's criminal conduct constituted aberrant behavior and certain other criteria are met.  U.S.S.G. § 5K2.20 ("[C]ourt may not depart below the guideline range on this basis if (1) the offense involved serious bodily injury or death; (2) the defendant discharged a firearm or otherwise used a firearm or a dangerous weapon; (3) the instant offense of conviction is a serious drug trafficking offense; (4) the defendant has more than one criminal history point . . .; or (5) the defendant has a prior federal, or state, felony conviction . . . .").  "Aberrant behavior" has been defined to mean "a single criminal occurrence or single criminal transaction that (A) was committed without significant planning; (B) was of limited duration; and (C) represents a marked deviation by the defendant from an otherwise law-abiding life."  U.S.S.G. § 5K2.20, comment (n.1).  When determining whether the court should depart on the basis of the defendant's aberrant behavior, the court "may consider the defendant's (A) mental and emotional conditions; (B) employment record; (C) record of prior good works; (D) motivation for committing the offense; and (E) efforts to mitigate the effects of the offense.  *Id*. at n.2.

Cases prior to the adoption of § 5K2.20's definition of "aberrant behavior" stated that it required "more than an act which is merely a first offense or 'out of character' for the defendant." *United States v. Williams*, 974 F.2d 25, 26 (5th Cir. 1992), *cert. denied*, 507 U.S. 934 (1993). In other words, there must be "some element of abnormal or exceptional behavior" such as "a spontaneous and seemingly thoughtless act rather than one which was the result of substantial planning." *Id*. Such explanations of the meaning of "aberrant behavior" informs the Guidelines' definition.

Studying the defendant's situation, the court concludes that none of the exceptions to the application of § 5K2.20 apply. Therefore, if Keller's criminal acts constitute "aberrant behavior," this court may have another avenue for downward departure. His actions constitute only two criminal acts within the course of his law-abiding 55-year life. PSR ¶¶ 31-36; *see generally* Letters. A problem arises, however, when considering whether the defendant committed the acts "without significant planning." U.S.S.G. § 5K2.20, comment (n.1). The defendant was convicted on the basis that he falsified two wire transfer confirmations as well as altering an email so it appeared to contain an appraisal for the subject of a proposed transaction. PSR ¶¶ 9, 11, & 12. Although the defendant may have been under a considerable amount of stress at the time and was recovering from a traumatic medical condition, *see generally* Letters (referring to changeover in business ownership, daughter's wedding, and life-

threatening brain aneurism), the defendant's behavior appears to be calculated, rather than spontaneous.

The Fifth Circuit's previous definition of "aberrant behavior" suggests a similar interpretation: although this is the defendant's first offense and admittedly "out of character," that alone does not qualify the defendant for a downward departure under § 5K2.20.  In fact, rather than bolstering an argument that this was a "seemingly thoughtless act," the defendant's letter to this court spends a considerable amount of time explaining his motivation (albeit not criminal) for committing the acts he did ("I wanted to maintain some stability with an employer that appeared to have a niche that would not be threatened with acquisition, merger, etc. any time soon."  "My objectives were always to provide the best business opportunities for my employers, to further their goals and objectives and hope they would remember me at review time.").  Therefore, a departure for aberrant behavior under § 5K2.20 is not available in this case.

### d. Downward Departure for Offense Level that Substantially Overstates Loss

U.S.S.G. § 2B1.1, comment (n.15(B)) provides that where the amount of loss substantially overstates the seriousness of the defendant's conduct a downward departure may be warranted.  The court in *United States v. Forchette*, 220 F. Supp. 2d 914 (E.D. Wis. 2002), analyzed a collection of cases and found that courts depart downward under this application note in four types of situations.  220 F. Supp. 2d at

924.  First is the "multiple causation" scenario, in which a series of events contribute to produce an inflated loss.  *Id*. (contributing factors include economic downturn, market collapse, negligence by others, and other events beyond defendant's control). Next is the situation named by the court as the "economic reality" principle.  *Id*. Here, the defendant devises a doomed scheme, but the actual loss is significantly lower than the intended loss.  Since the Guidelines base the offense level on the higher of the intended or actual loss, the defendant receives a much higher offense level although the intended loss bears no relationship to the "economic reality."  *Id*. at 924-25; see also *United States v. Roen*, 279 F. Supp. 2d 986, 991 (E.D. Wis. 2003) (clarifying that "economic reality" situation often involves little to no actual loss to the victim).  The third scenario is one in which the defendant's role in the scheme warrants a downward departure.  *Id*. at 925.  Here, the court lists multiple reasons for leniency for the defendant:

> [T]he defendant may have had a limited or inferior role in the fraud that bore little relationship to the amount of the loss; he may have had little or no knowledge of the amount being taken, such that it would be unfair to attribute the entire amount of loss to him; his intent in involving himself in the scheme may have been significantly different than of the usual fraud defendant, e.g. he may have entered the scheme with honest intentions or with the intent to make good on his obligations; his fraudulent representation may have been of limited materiality, as where he could have obtained a loan by truthful means but at a higher interest rate; or the defendant's fraud may have been for little or no gain, especially in comparison to the size of the loss.

*Id*. (citing cases).  Finally, the fourth situation involves a defendant who has made extraordinary efforts to remedy the wrong.  *Id*. (departure especially warranted where the defendant has made full or nearly full restitution prior to being charged or where he had sufficient unpledged assets to cover the loss in a fraudulent loan case).

Here, the defendant qualifies for § 2B1.1's downward departure under either the "defendant's role" or "economic reality" categories described in *Forchette*.  It appears that the defendant entered the scheme with an intent "significantly different [from] the usual fraud defendant"; rather than wishing to defraud TIB of millions of dollars, he was responding to the pressure of his superiors by pushing through a loan application without the required support staff.  In fact, the defendant received no monetary benefit from the scheme (other than, arguably, the benefit of continued employment by TIB).  In addition, as the probation officer stated in the PSR, had TIB retained the pledged collateral at the time of sentencing, the actual loss (and thereby the defendant's offense level) would be lower by two levels.  It could also be argued that, had the original lessee not defaulted, TIB would never have fired the defendant, nor would the defendant now be responsible for any loss.

Considering the situation, the court concludes that a downward departure under § 2B1.1 is warranted for this defendant, although prison time should still be served.  See also *United States v. Redemann*, 295 F. Supp. 2d 887, 900-01 (E.D. Wis. 2003) (finding that the fact that the defendant did not receive all defrauded funds

did not diminish the harm caused to the victim bank, therefore only a two-level departure under § 2B1.1 was warranted). As a conservative estimate, the court will calculate the departure based on the original appraisal by the government's expert witness: $1.8 million. The specific offense characteristic would thus be an increase of 12 points, resulting in a total offense level of 20 (rather than an increase of 14 points resulting in an offense level of 22). However, this is not the end of the court's analysis regarding the appropriate sentence for this defendant.

e.  Non-Guidelines Sentence

As discussed above, since the Guidelines are advisory, a reasonableness review will be applied by appellate courts. *Mares*, 402 F.3d at 519. Should a sentencing court depart from the Guidelines, it must give fact specific reasons for its departure so an appellate court can adequately review that sentence. *Id*. Although little direction exists from the Fifth Circuit regarding the meaning of "reasonableness," the Court has stated that it will determine whether a sentence is unreasonable with regard to § 3553(a). *United States v. Smith*, 417 F.3d 483, 490 (5th Cir. 2005).

18 U.S.C. § 3553(a) provides in part:

> The court, in determining the particular sentence to be imposed, shall consider--
>
>> (1)  the nature and circumstances of the offense and the history and characteristics of the defendant;
>>
>> (2)  the need for the sentence imposed--

(A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)  to afford adequate deterrence to criminal conduct;

(C)  to protect the public from further crimes of the defendant; and

(D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

* * *

18 U.S.C. § 3553(a).

For the situation here, it appears that a downward departure under § 2B1.1 of greater than two levels would accomplish the goals of § 3553(a), which is the guidepost for reasonableness in appellate review.  *Smith*, 417 F.3d at 490 ("Section 3553(a) remains in effect, and its factors guide us in determining whether a sentence is unreasonable.").  Although the defendant falsified documents, he received no monetary benefit.  He has expressed seemingly sincere remorse, so it appears that there is little chance for recidivism.  Ultimately, the defendant seems to be a generally law-abiding man who made an unfortunate choice due to family stress, physical health problems, and pressure from his employers.  Thirty-three months in prison

- 15 -

(the applicable Guideline range after a two-level departure based on § 2B1.1) seems exceptionally long to the court for the defendant's behavior, particularly considering his strong employment history and community service.  PSR ¶¶ 48-56; *see generally* Letters.  Mandatory restitution alone might arguably serve as adequate punishment. However, so as not to deprecate the seriousness of the offense and the loss suffered by TIB or its insurer, the court finds that a downward departure should include some period of imprisonment.  The court agrees with the government that straight probation is not appropriate in this case.  Prison time will promote respect for the law and "afford adequate deterrence" both to this defendant and others who might contemplate similar unlawful conduct.  18 U.S.C. § 3553(a)(2)(A), (B).  Therefore, a departure[3] of four additional levels (beyond the two already departed to account for the government's expert appraisal of the collateral) is proper.  This results in a total offense level of 16 and a Guidelines range of 21-27 months.  21 months in prison, in addition to restitution sufficient to repay TIB for the loss suffered, is an appropriate sentence.

## 2.  Clarifications to Paragraphs 42 and 43

The defendant did not object to paragraphs 42 and 43, but did wish to note clarifications to those paragraphs.  Objections at 2 (clarifications involve aneurisms

---

[3]     The court is unsure as to the proper terminology for non-Guidelines sentences in the wake of *Booker* and *Mares*.  However, until more caselaw is available to guide the court, hopefully "downward departure" conveys the intended concept.

and prescribed medications).  The probation officer recommended that the court

accept those clarifications and also noted that this would not affect the calculations

under the Guidelines.  Addendum Sections II, III.  The court therefore  will accept

the probation officer's recommendation on these two clarifications and will consider

the PSR amended accordingly.

### III.  <u>CONCLUSION</u>

The probation officer correctly calculated the range for sentencing under the

Guidelines in the PSR.  However, as suggested by the same officer in paragraph 73 of

the PSR, this is a case in which the offense level determined under the Guidelines

substantially overstates the seriousness of the offense.  Therefore, the court concludes

that a two-level decrease in the defendant's offense level based on the difference

between the lease contract and the government's appraisal of the property is

warranted.  This results in an offense level of 20, rather than 22.  The applicable

sentencing range is thus 33 to 41 months.  However, considering -- among other

factors -- the defendant's nonexistent criminal history, the fact that he did not profit

from the offense, his lack of criminal motive, apparently sincere remorse, and little

likelihood of recidivism, the court decides that this is an appropriate situation in

which to depart even further.  Therefore, the court departs downward to an offense

level of 16.  The resulting Guideline range of 21 to 27 months is sufficient to satisfy

all the sentencing factors that are set forth in § 3553(a).

In accordance with the foregoing, it is **ORDERED** that the defendant shall be committed to the custody of the Attorney General or his authorized representative for a term of twenty-one months on Count 2 and twenty-one months on Count 3, the term of imprisonment on each of those counts to run concurrently.  In addition, restitution in this case is mandatory under the Mandatory Victim Restitution Act of 1996, 18 U.S.C. § 3663A, which requires an order of restitution irrespective of the defendant's resources.  It is therefore further **ORDERED** that the defendant shall pay restitution to the clerk of this court in the amount of $931,500 for disbursement to TIB, the victim of this crime.[4]

October 17, 2005.

A. JOE FISH
CHIEF JUDGE

---

[4] Of course, if this loss is paid by an insurance company, then the victim of the crime would no longer be TIB, but presumably the indemnifying insurance company would be subrogated to TIB's rights as a victim.

- 18 -